## UNITED STATES v. LEVY et al.
### No. 40094.

District Court, W. D. Washington, N. D. May 5, 1931.

Anthony Savage, U. S. Atty., and Cameron Sherwood, Asst. U. S. Atty., both of Seattle, Wash.

H. Sylvester Garvin, of Seattle, Wash., for defendant Morris.

NETERER, District Judge.

The defendant Morris, convicted of conspiracy to use the mails to defraud, was sentenced to 13 months in the federal penitentiary at McNeil's Island and to the payment of $500 fine; and conviction was affirmed on appeal. He now stands at the threshhold of the penitentiary. The United States attorney has moved the court for commitment —passport to entry. The defendant requests that he be placed on probation and execution of sentence suspended. The government objects to the court's jurisdiction to grant probation after the term.

Strong sentiment is expressed by eminent men of California, prominent in the state and national affairs. I might say, parenthetically, that I have a letter from the Governor of the state, as a citizen, and likewise have a night telegram from a member of Congress from San Francisco; I have also letters from men engaged in industrial affairs; likewise from persons engaged in organized social activities and state-wide, and beyond, reputation testifying to personal acquaintance and exemplary conduct of the defendant since conviction and his employment and support of his wife, a semi-invalid, and one child, and that his prospect for continued service is good.

There is not a shadow of a doubt of guilt. The defendant was represented at trial by able lawyers, and every contention that could be made in his behalf was ably and efficiently made, and, while it may be said "nothing emboldens sin as much as mercy" (Shakespeare), we also read: "He that is without sin among you, let him cast the first stone. * * *" John 8 :7. "Lenity will operate with greater force in some instances than rigor." Washington, Moral Maxims.

The defendant Morris, a young man just on the threshhold of life, and two others, were charged with conspiracy; all were convicted. The jury in its verdict recommended mercy to the defendant and Harris. The scheme, I am convinced, was not conceived by the defendant but by another with a criminal record, who did not appeal from the judgment and sentence of two and a half years in the penitentiary and $1,000 fine; but the defendant Morris and his associate in the appeal carried forward the plan in very efficient manner. Neither the defendant Morris nor his associate have a previous criminal record. The associate, I understand, has since died.

The probation system is predicated upon the theory that it is easier to reclaim an un-

hardened young first offender without commitment to prison than after his commitment. While the use of the mails to carry forward a scheme to defraud is of the most insidious, since it insinuates itself upon the ignorant, innocent, and unwary, and steals away their judgment, "ere they are aware," by depicting in colorful language and by false statement large, speedy, financial gains, and takes from those who can ill afford the little frugal saving which has been made for the support of the wife and little children in the event of interrupted earning opportunity or power, incarceration will not return the money wrongfully taken, nor prevent others from engaging in the like enterprise. "There is no virtue so truly great and godlike as justice." Addison. "The greatest attribute of Heaven is mercy, and 'tis the crown of justice, and the glory, where it will kill with right and save with pity."

The Supreme Court in United States v. Murray, 275 U. S. 347, 358, 48 S. Ct. 146, 149, 72 L. Ed. 309, said: "The great desideratum was the giving to young and new violators of law a chance to reform and to escape the contaminating influence of association with hardened or veteran criminals in the beginning of the imprisonment. Experience had shown that there was a real locus poenitentiae between the conviction and certainty of punishment, on the one hand, and the actual imprisonment and public disgrace of incarceration and evil association, on the other. * * * The avoidance of imprisonment at time of sentence was therefore the period to which the advocates of a Probation Act always directed their urgency. Probation was not sought to shorten the term. Probation is the attempted saving of a man who has taken one wrong step, and whom the judge thinks to be a brand who can be plucked from the burning at the time of the imposition of the sentence. The beginning of the service of the sentence in a criminal case ends the power of the court even in the same term to change it. Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872. Such a limit for probation is a natural one to achieve its end." See, also, United States v. Benz, 282 U. S. 304, 51 S. Ct. 113, 75 L. Ed. ——. White v. Burke (C. C. A.) 43 F.(2d) 329.

While it is after the term of final judgment, the remittitur from the Court of Appeals has just been entered, and the defendant Morris is at the bar of the court for commitment, and, service of sentence not having been entered upon, the power of the court is not ended. I believe the defendant "to be a brand who may be plucked from the burning." In this case I believe justice will be best served by suspending execution and admitting defendant to probation for two years, and such further time as may hereafter be determined, on condition that the fine imposed be paid, and that he abstain from evil association, support his wife and child, and in all things demean himself as a law-abiding and patriotic citizen, and report to the probation officer of this court at least once a month as to his employment and conduct, and to the probation officer of Los Angeles, his present residence.

An order may be presented.